### Richmond

Callie H. Hawks v. Elizabeth T. DeHart, Administratrix, Etc.

January 17, 1966.

Record No. 6070.

Present, All the Justices.

*Ben M. Richardson* and *Charles H. Osterhoudt*, for the plaintiff in error.

*John B. Spiers, Jr. (Spiers & Spiers*, on brief), for the defendant in error,

BUCHANAN, J., delivered the opinion of the court.

This action was begun by a motion for judgment filed March 23, 1963, by Mrs. Callie H. Hawks, plaintiff, against Dr. Rufus DeHart, defendant, for damages alleged to have been caused by his negligence in leaving a surgical needle in her neck in the course of a goiter operation performed by him in April, 1946. Dr. DeHart died within a few days after process was served on him and the action was revived against his administratrix.

A jury was impaneled and the plaintiff introduced her evidence. At its conclusion, on motion of defendant, the court struck it out and entered summary judgment for the defendant, Rules 1:11, 3:20, on the grounds that the action was barred by the statute of limitations and that the plaintiff had failed to prove that the defendant was negligent or that the needle in plaintiff's neck was left there by him. Plaintiff appeals from that judgment and we deal first with the question of whether the action was barred by the statute of limitations.

Dr. DeHart died on March 29, 1964, and four days prior the plaintiff took his deposition "to be read in evidence on behalf of the Plaintiff." The substance of his testimony was that at the time of the operation he was chief surgeon of the Radford Hospital; that he had no specific recollection of this operation other than that the usual technique was followed; that the needle used was held by an instrument like a pair of pliers and he was sure that if he lost the needle in the operation he would have known it; that the needles were always counted before and after an operation by the operating room nurse and the scrub nurse, who must verify the result to him. He testified that he had never told the plaintiff that she did not have a needle or tried to conceal it, and that he had never before heard any complaint about the needle.

Dr. J. F. Chairsell assisted in the 1946 operation. He did not recall any circumstance that would indicate that a needle had been left in the incision. Plaintiff was his patient for sometime after the operation and at some later date, he did not remember when, she complained to him about a choking sensation in her throat. She was his patient when Dr. Hartwell removed her gall bladder in 1952 and he read an x-ray record of the hospital dated September 16, 1952, which stated that on this film and on previous films taken in January 1952 and in November 1949, there was evidence of a curved surgical needle in the plaintiff's neck. He said that to the best of his knowledge he told the plaintiff about this.

Dr. Hartwell had operated on the plaintiff in October 1949 for the removal of cancerous thyroid tissue. He made a transverse incision in the plaintiff's throat at a point just above the scar caused by the 1946 operation. He said no needle was lost in his operation; that the scrub nurse usually keeps track of all the instruments and needles used, and if one was lost he thought he would know it.

On October 8, 1963, plaintiff called on Dr. Robert Keeley, a surgeon, and complained of a choking sensation and told him there was a needle in her throat. He operated on October 17 and removed a needle. He said the incisions made in 1946 and 1949 were close together; that the muscle in which the needle was found would have been disturbed in both operations, and it could not be said with certainty which one it was related to.

Plaintiff testified that she first discovered she had the needle in her throat in May 1962, following an examination by a doctor in Pulaski. She said she had pain and a stinging sensation in her throat after the 1946 operation, and told Dr. DeHart about it three or four times, but he said she was doing fine and would be all right. Other doctors told her it was her nerves. She told Dr. Chairsell when he treated her for other trouble in 1949 that she could feel something, a lump or something, in her throat, and she showed Dr. Hartwell where it was when he operated on her in 1949, but like the rest of the doctors he said it was due to her operation and it would be all right. She said she felt that there was something in her neck that should not be there, and she believed that the defendant had left it there.

Plaintiff's husband testified that after plaintiff was released from the hospital she saw Dr. DeHart three or four times about her trouble but he did not seem to take her seriously, so she changed doctors. Plaintiff testified that she did not consult Dr. DeHart after 1946, and had not seen him since 1949.

If the evidence offered by the plaintiff was sufficient to allow the jury to find that the needle was negligently left in the plaintiff's neck by Dr. DeHart in 1946, and that the plaintiff could not be charged with knowledge of that wrong until May 1962, which we do not decide, time had clearly barred her right to recover when she brought this action in 1963.

Section 8-24 of the Code now provides: "Every action for personal injuries shall be brought within two years next after the right to bring the same shall have accrued." In 1946, when the operation was performed, the limitation was one year. Code 1919, § 5818; *Anderson* v. *Hygeia Hotel Co.*, 92 Va. 687, 24 S.E. 269.

An amendment made by Acts 1954, ch. 589, extended the period to two years but provided that the extension should not apply to any cause of action arising prior to July 1, 1954.

We are committed in Virginia to the rule that in personal injury actions the limitation on the right to sue begins to run when the wrong is done and not when the plaintiff discovers that he has been damaged.

*Street* v. *Consumers Min. Corp.*, 185 Va. 561, 39 S.E. 2d 271, 167 A.L.R. 886, was an action for the death of Street, who worked as a driller in a coal mine where he breathed silica rock dust from which he gradually contracted the disease of silicosis from which he died in 1942. His last exposure to the dust, which was the negligence charged against defendant, was in 1936. We sustained defendant's plea of the statute of limitations and said:

"The right of Noah Street to bring an action for his alleged injuries accrued when the wrong was done to him and not at the time of the damage. The foundation of his right was the alleged wrong. *Richmond* v. *James*, 170 Va. 553, 567, 197 S.E. 416, 116 A.L.R. 967. Under Virginia Code, 1942 (Michie), section 5818, that right expired at the expiration of one year next after the right to bring the same had accrued."

The reason for the rule was thus expressed:

"Statutes of limitation are statutes of repose, the object of which is to compel the exercise of a right of action within a reasonable time. They are designed to suppress fraudulent and stale claims from being asserted after a great lapse of time, to the surprise of the parties, when the evidence may have been lost, the facts may have become obscure because of defective memory, or the witnesses have died or disappeared."

We repeated and adhered to that principle in *Housing Authority* v. *Laburnum Corp.*, 195 Va. 827, 80 S.E. 2d 574, and held that the limitation of the action began to run when the wrongful act was done in 1943, and not when the damage occurred and the wrongful act was discovered in 1948. We said:

"This court, from early times, has adhered to the general rule, which is not controverted by the plaintiff, that the limitation begins to run from the moment the cause of action accrues and not from the time it is ascertained that damage has been sustained. [Citing cases.]

"In the cases above cited the existence of the cause of action was equally as difficult of ascertainment as the cause of action in the case at bar. The difficulty in ascertaining the fact that a cause of

action exists plays no part in the general rule." See also Burks Pl. & Pr., 4 ed., § 233, p. 394; 54 C.J.S., Limitations of Actions, § 174 b., p. 142; 41 Am. Jur., Physicians and Surgeons, § 123, p. 233; Anno., 80 A.L.R. 2d 368, 374.

There are cases to the contrary, fixing the discovery of damage or other events as the time when the limitation begins, *e.g.*, *Morgan* v. *Grace Hospital, Inc.*, (W. Va.), 144 S.E. 2d 156; but as said by Louisell and Williams in "Medical Malpractice," § 13.06, at p. 369:

"By far the majority of courts have held that in the absence of special circumstances that are common to various types of cases, particularly disability of the plaintiff or fraudulent concealment by the defendant, the cause of action accrues and the statute commences to run at the time of the wrongful act. Among the common situations involving this issue are the foreign body cases, i.e. those where the gauze sponge or surgical instrument is left in a patient at the time of surgery. Most cases place the accrual of the cause of action at the closing of the incision, not at the discovery of the fact some time afterward. The statute usually is held to run from the wrongful act, not the date the damage occurs. \* \*"

Plaintiff alleged in her motion for judgment that Dr. DeHart "did knowingly, actively and negligently conceal from the plaintiff the fact of the presence of such needle in her neck." Section 8-33 of the Code provides that if a defendant obstructs the prosecution of such action as this, by stated ways not here applicable, or by any other indirect way or means, the time of such obstruction shall be excluded in applying the limitation.

In *Housing Authority* v. *Laburnum Corp.*, *supra*, 195 Va. at 840, 80 S.E. 2d at 582, we held:

"\* \* Constructive fraud is not such as will toll the running of the statute of limitations. The character of fraud necessary to toll the statute must be of a variety involving moral turpitude. A defendant must intend to conceal the discovery of the cause of action by trick or artifice and must have thus actually concealed it from the plaintiff in order for the exception to apply. \* \*" See also *Culpeper Natl. Bank* v. *Tidewater Improvement Co.*, 119 Va. 73, 89 S.E. 118.

Plaintiff's evidence completely failed to establish such trick or artifice or purpose on the part of Dr. DeHart. It was not sufficient to toll the running of the statute of limitations and the judgment appealed from is accordingly

*Affirmed.*