**Blaine Edward LARGE, Plaintiff,**

v.

**BUCYRUS–ERIE CO., et al., Defendants.**

**Civ. A. No. 80–0855–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 20, 1981.

Gerald F. Ragland, Jr., Springfield, Va., for plaintiff.

Andrew J. Ellis, Jr., D. Eugene Webb, Jr., Mays, Valentine, Davenport & Moore, Richmond, Va., for Northwest Engineering Co.

James C. Shannon, May, Miller & Parsons, Richmond, Va., for Bucyrus-Erie Co.

MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a citizen of Virginia, brings this products liability action against the manu-

facturers of certain power shovels to recover for various respiratory diseases and hearing loss allegedly sustained during plaintiff's operation and maintenance of the machines.

Jurisdiction vests in this Court pursuant to 28 U.S.C. § 1332.

The matter is before the Court on defendants' motion for partial summary judgment. Defendants argue that plaintiff's claims relating to his respiratory injuries are barred by the applicable Virginia statute of limitations.[1]

For the reasons which follow, the Court concludes that the defendants' motion for partial summary judgment is well taken.

Plaintiff filed this action on November 3, 1980 against Bucyrus-Erie Co. ("Bucyrus-Erie") and Northwest Engineering Co. ("Northwest"), each of which are corporations organized under the laws of a state other than Virginia, and each of which has its principal office in Wisconsin.

Plaintiff alleges that he was an employee of Luck Quarries, Inc., in Burkeville, Virginia from April 2, 1962 until November 17, 1978. During this employment, plaintiff operated and maintained two power shovels, one of which was designed, manufactured, marketed, distributed and sold by Bucyrus-Erie, and the other by Northwest.

Plaintiff claims that the design and location of the operator's station on these shovels are such that the operator is exposed to high levels of noise and dust from the engine, clutch, fans and other parts of the machine. He asserts that the station is so placed as to have exposed him to concentrations of the dust in the atmosphere surrounding the machines. Plaintiff also alleges that the clutch, drum and winch linings on the shovels contained asbestos and that he was exposed to asbestos dust from these surfaces while operating or maintaining the machines.

Plaintiff claims that he has suffered silicosis, industrial bronchitis, shortness of breath, shortening of lifespan and increased probability of cancer as a result of his exposure to silica and stone dust in the air around the shovels and asbestos dust from parts of the machines. The asserted grounds for defendants' liability are breach of express and implied warranties, negligent design, manufacture and sale, strict liability, negligent failure to warn, and malice or reckless disregard by the defendants of his rights.

The Virginia statute of limitations provides that actions for personal injuries must be brought within two years after the cause of action has accrued. Va.Code § 8.01–243 A. Section 8.01–230, added to the Code in 1977, specifies that for purposes of the statute of limitations, an action for personal injuries is deemed to accrue and the period begins to run "from the date the injury is sustained. . . ."

The Court's task, then, is to determine whether there is any genuine issue as to the date on which plaintiff's respiratory injuries were sustained. In resolving this question, the Court is cognizant of the fact that the defendants bear the burden of proving facts necessary to establish the applicability of the statute of limitations under Virginia law. *Locke v. Johns-Manville Corp.*, 221 Va. 951, 275 S.E.2d 900 (1981); *Louisville and Nashville R. Co. v. Saltzer*, 151 Va. 165, 144 S.E. 456 (1928).

The Court's inquiry in this diversity action is guided by the decision of the Supreme Court of Virginia in *Locke v. Johns-Manville Corp., supra.* There, the plaintiff brought a products liability action against several companies which mined, manufactured and sold asbestos insulation materials. Plaintiff, an industrial electrician who had worked with asbestos insulation from 1948 to 1972, claimed that inhalation of asbestos fibers and dust during that period had caused him to develop mesothelioma, a cancerous tumor of the lung. The Virginia Supreme Court held that the action filed on July 24, 1978 was timely.

The *Locke* court faced, as does this Court, the problem of determining the date of injury for a condition which does not arise

---

1. Defendants do not assert that plaintiff's hearing loss claim was untimely.

at a specific point of time, but results over a period of time. The difference between this case and *Locke*, however, is that in *Locke* all exposure to the dust had ended six years before the plaintiff brought his action, whereas here there was a two-week period within two years of the filing of this suit during which plaintiff was exposed to the silica and asbestos dusts while operating the shovels.[2] This Court must determine, using the *Locke* approach, the date of injury for plaintiff's respiratory diseases, as well as the relevance, if any, of the two weeks of exposure within the limitations period.

The *Locke* court construed the word "injury" in § 8.01–230 to mean "positive, physical or mental hurt to the claimant, not legal wrong to him in the broad sense that his legally protected interests have been invaded." 275 S.E.2d at 904. Stating that the running of the limitations period is "tied to the fact of harm to the plaintiff," the court rejected any notion that it was keyed to the date of defendant's wrongful act. *Id.*

The "crucial question," said the *Locke* court, is "[w]hen was the plaintiff hurt?" Holding that the answer lies in the medical evidence, the court set up the following rule:

> [T]he cause of action accrued and the statute of limitations began to run from the time plaintiff was hurt. The "time plaintiff was hurt" is to be established from available competent evidence, produced by a plaintiff or a defendant, that pinpoints the precise date of injury with a reasonable degree of medical certainty.

275 S.E.2d at 905.

Concluding, on the basis of the expert medical opinion, that the cancerous tumor did not begin to form contemporaneously with exposure to the asbestos dust, the court in *Locke* found that the 1948–1972 period of exposure bore no medical relationship to when, or even if, the disease developed. Since the injury did not "spring up at the infliction of the wrongful act" (the

time when the dust was inhaled), the fact that the plaintiff's exposure ended in 1972 did not bar the 1978 action. 275 S.E.2d at 903.

On the other hand, the *Locke* court had no evidence pinpointing the beginning of the mesothelioma tumor. The record did, however, reflect that the plaintiff was in excellent health and physical condition until November of 1977, when he began to experience some impairment of lung function. Chest x-rays on April 14, 1978 were normal. The first clinical or other medical evidence of mesothelioma "or any other lung-related abnormality or disease" came in a May 22, 1978 x-ray which revealed "an abnormality." 275 S.E.2d at 902. Mesothelioma was diagnosed in June of 1978. From this evidence, the court concluded that the "time plaintiff was hurt" was either the November 1977 date when plaintiff first experienced lung problems, or the May 1978 x-ray. Since both occurred within two years of suit, the action was not barred by the statute of limitations.

In reaching this decision, *Locke* specifically rejected any rule which would commence the running of the statute of limitations on the date of discovery of the injury, or on the date when the injury should have been discovered in the exercise of reasonable diligence. The court also stated that it was not postponing the beginning of the limitations period until the time of diagnosis of the injury or disease. Rather, if expert medical testimony demonstrates that the injury occurred before the time when the disease manifested itself by symptoms, the statute begins to run from the earlier date. 275 S.E.2d at 905.

In the instant case, there is no conclusive medical evidence in the record which pinpoints the precise date of the occurrence of plaintiff's bronchitis, asbestosis and silicosis diseases. The evidence does reveal, however, that the plaintiff has had a long history of lung-related problems.

---

**2.** Plaintiff was exposed to these dusts while operating or maintaining these machines from

April 2, 1962 until November 17, 1978. This suit was filed on November 3, 1980.

A medical history taken by a physician on July 26, 1958, before plaintiff began working with the defendants' machines, indicated that the plaintiff had had asthma and "pulmonary disease" for a long time, and that he had been having chest pains and coughing up pus. The reporting doctor's clinical impression was that plaintiff suffered from "chronic pulmonary disease."[3] A May 27, 1965 x-ray report of a physician stated that plaintiff's right lung showed "extensive bullous emphysema at the base with old pleurisy."[4] An x-ray diagnosis by another doctor on April 7, 1975 described pleural thickening in plaintiff's right chest area and concluded that plaintiff suffered from pneumoconiosis.[5] Another x-ray report dated August 30, 1978 described "significant" pleural thickening and pulmonary densities in both sides of plaintiff's chest.[6]

Plaintiff underwent extensive examination during a visit to Chippenham Hospital from November 26 to December 7, 1978. A November 15 preliminary report by Dr. Rodney H. Smith related that plaintiff was "progressively more short of breath over the last year and a half" (which would refer to May of 1977, approximately), and that plaintiff had coughed up green sputum streaked with blood in August 1977. Dr. Smith's impression was the plaintiff suffered from either silicosis or asbestosis.[7] November 26 and November 27 x-ray reports described dense pleural thickening.[8] Upon plaintiff's discharge on December 7, 1978, his final diagnosis was reported as industrial bronchitis along with "asbestos-related pleural thickening," said to be "most likely asbestosis."[9]

This diagnosis was repeated in a May 24, 1979 report by Dr. Richardson Grinnan,[10] who described plaintiff's primary respiratory problem as industrial bronchitis, with silicosis and/or asbestosis likely.

■ Plaintiff, relying on the Grinnan report and the November 26–December 7, 1978 hospital visit, argues that the possibility of industrial bronchitis, silicosis and asbestosis was not indicated until the hospital stay, which occurred within two years of this suit. The hospital treatment did mark the first time that any diagnosis of these particular diseases was made. *Locke* made it clear, however, that the date of diagnosis, or even the date of symptoms, is irrelevant if medical evidence pinpoints the occurrence of the injury at another time. 275 S.E.2d at 905.

The only medical evidence in the record which attempts to date the occurrence of plaintiff's injury is the affidavit, offered by the defendants, of Dr. Charles Donlan, Jr., a Virginia specialist in pulmonary medicine, who is certified as a "B" reader by the National Institute of Occupational Safety and Health.[11] Based on an examination of documents including those described above and of x-ray films dated August 30 and November 26, 1978, and April 24 and May 14, 1979, Dr. Donlan concludes that as of November, 1980 plaintiff "was suffering from no pulmonary disease or process which was not evident in August 1978 or before...."

Certainly, plaintiff was suffering from respiratory ailments long before November 3, 1978, two years before this suit was filed. Although Dr. Donlan's affidavit does not "pinpoint" the occurrence of plaintiff's injuries with any degree of specificity, it does establish that all of the respiratory injuries of which plaintiff complains occurred more

---

3. Exhibit C.1 to Memorandum in Support of Defendants' Motion for Partial Summary Judgment (hereinafter referred to as "Defendants' Memo").

4. Exhibit C.2 to Defendants' Memo.

5. Exhibit C.3 to Defendants' Memo.

6. Exhibit C.4 to Defendants' Memo.

7. Exhibit C.5 to Defendants' Memo.

8. Exhibits C.7 and C.8 to Defendants' Memo.

9. Exhibit C.6 to Defendants' Memo.

10. Exhibit C.11 to Defendants' Memo.

11. Dr. Donlan states that by virtue of his certification as a "B" reader, he is engaged by NIOSH in the interpretation of chest x-rays of workers exposed to occupational dusts.

than two years before this suit was filed, and that no injury occurred within the limitations period. Since plaintiff's counsel conceded at oral argument that he had no evidence to controvert the findings reported in Dr. Donlan's affidavit, there is no disputed issue of fact on this question and the *Locke* rule would appear to require summary judgment for the defendants with respect to plaintiff's respiratory claims.

First, however, the Court must determine the relevance of the approximately two-week period within two years of this suit during which plaintiff was exposed to silica and asbestos dust while operating the machines. Of course, the general rule in Virginia is that the limitations period begins to run when the initial injury, even if relatively slight, is sustained, and the manifestation of more substantial injuries at a later date does not extend the limitations period. *Virginia Military Institute v. King*, 217 Va. 751, 232 S.E.2d 895 (1977); *Richmond Redevelopment and Housing Authority v. Laburnum Construction Corp.*, 195 Va. 827, 80 S.E.2d 574 (1954); *Johnson v. A. H. Robins Co., Inc.*, No. 79–0194–R (E.D. Va. April 17, 1981). Plaintiff argues, however, that *Locke* did not overrule a "last exposure" test of when the statute begins to run.

A reading of the *Locke* holding, and of that court's treatment of the cases which preceded it, reveals that the time of a defendant's wrongful or negligent act, or of a plaintiff's exposure to an outstanding wrong committed by the defendant, is *not* relevant in and of itself. It becomes relevant to the running of the limitations period only incidentally: *i. e.* only if the wrongful act or exposure to it causes some injury to the plaintiff. Moreover, the actual dates of the defendants' acts or of exposure are reliable indicators of the date of injury only if the act or exposure and the injury occur contemporaneously. Thus, even if there is a wrongful act by the defendant or expo-

sure to it by the plaintiff within two years of suit, it is relevant only if it causes injury or damage. If the plaintiff's injury was "complete" more than two years before the suit, his claims based on that injury are time-barred.[12]

*Locke* first discussed a number of earlier cases in which the defendant's wrongful act occurred at an early point in time, and the plaintiff was exposed to this wrong until an identifiable time when injury occurred. *Louisville and Nashville R. Co. v. Saltzer*, 151 Va. 165, 144 S.E. 456 (1928), was an action by plaintiff to recover for erosion damage to his land caused by a change made by defendant in the channel of a river flowing through plaintiff's property. The defendant's allegedly wrongful act occurred in 1891 when it altered the river. The plaintiff's exposure to this outstanding wrong lasted through the time of suit on January 27, 1923. Concluding that the action accrued not in 1891 but in late January and February of 1918 when high water occurred, the court held that the suit was thus not barred by the applicable five-year statute of limitations. The plaintiff in *Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 168 S.E.2d 257 (1969), sought recovery from the seller of an automobile for personal injuries received in a January 22, 1967 accident. Though the defendant's wrongful act— breach of implied warranty—occurred in 1964 at the time of sale, the court held that the plaintiff's cause of action for personal injuries accrued at the time of the accident and the suit filed April 5, 1967 was timely under the two-year limitations rule.

The other two cases relied on by *Locke* to support its rule that injury can be said to occur after the time of defendant's wrongful act or after plaintiff's exposure to it were *Sides v. Richard Machine Works, Inc.*, 406 F.2d 445 (4th Cir. 1969), and *Barnes v. Sears, Roebuck & Co.*, 406 F.2d 859 (4th Cir. 1969). Both involved negligent acts by defendant which occurred at the time of sale

---

**12.** In *Locke* itself, the dates of exposure were entirely irrelevant because the cancerous tumor involved there does not arise contemporaneously with exposure to asbestos dust. In fact,

there is no injury until some time elapses, and some people exposed to the fibers may never develop a tumor. 275 S.E.2d at 905.

of a product, followed by a period of time in which this wrong was outstanding as a "potentiality or threat" and plaintiff was exposed to it, and ultimately an accident causing injury to the plaintiff. In each the court held that the cause of action arose at the time of the accident, and not at the time of the commission of the wrongful act.

*Locke* then went on to distinguish other cases, which originally had seemed to set up a last exposure or time of the wrongful act rule for when the statute of limitations begins to run, as "factually inapposite." 275 S.E.2d at 907. *Locke* saw these cases as standing for a rejection of the discovery rule, and as involving injury or damages which existed at the time of the wrongful act. Again, since the occurrence of the disease in *Locke* bore no relation to the time of the wrongful act or plaintiff's exposure to it, the court could distinguish these earlier cases.

One of these cases involved a disease suffered by the plaintiff in the instant action. In *Street v. Consumers Mining Corp.*, 185 Va. 561, 39 S.E.2d 271 (1946), the plaintiff's decedent had gradually contracted silicosis while working with compressed air drills drilling rock in defendant's mine. The plaintiff claimed that defendant was negligent in not providing the deceased with a suitable workplace and protective equipment, and in failing to warn him of the danger. The deceased had worked for the defendant from 1935 to September 1936, and the wrongful death action was filed in 1944. Stating the rule that the statute "begins to run from the time of the commission of the wrongful or negligent act...," 39 S.E.2d at 272, the court decided that the applicable one-year limitations period had expired before the suit was filed. The court noted that a 1940 x-ray showed that deceased had silicosis and his doctor's opinion was that he had been suffering from it for 10 to 15 years, but there was "no definite evidence to show at what time silicosis was contracted." *Id.* In *Locke* the court saw this case as one where the "injury was complete and the cause of action accrued many years before the plaintiff's wrongful death action was instituted." 275 S.E.2d at 907.

The three other cases in this vein discussed by *Locke* were *Richmond Redevelopment and Housing Authority v. Laburnum Construction Corp., supra, Hawks v. Dehart,* 206 Va. 810, 146 S.E.2d 187 (1966), and *Virginia Military Institute v. King, supra.*

The court in each case had held that the time of discovery of plaintiff's injury, and the difficulty of such discovery, are irrelevant. In *Laburnum*, the wrongful act of the defendant was the use of defective materials and improper workmanship in installing a gas pipe in a building owned by the plaintiff in 1943. The plaintiff was "exposed" to this wrong from 1943 through the time of an explosion in 1948 caused by gas leaking from the pipe. The court held that the plaintiff's action to recover for the damage from the explosion was untimely, since the damage caused by the explosion was only consequential, not direct, damage, and the cause of action accrued when the defective work was done in 1943. *Locke* construed this to mean that the "hurt" alleged was the harm done to the pipe line upon installation in 1943, which was not discovered until the 1948 explosion. This injury, said *Locke*, was "complete" no later than 1943. 275 S.E.2d at 907.

The plaintiff in *Hawks* brought a medical malpractice action against her doctor, claiming that he negligently left a surgical needle in her neck in a 1946 operation. Plaintiff was exposed to this needle until it was removed on October 17, 1963. Plaintiff's suit was in March of 1964. The court stated the rule that the limitations period begins to run "when the wrong is done..." and held that the claim was barred. 146 S.E.2d at 189. *Locke* read this to mean that the plaintiff was hurt when the needle was allowed to remain in her body, and that her injury was "complete" in 1946 when this act occurred. Apparently, plaintiff's later exposure to this wrong was not relevant because the injury was complete in 1946.

Lastly, *King* was a suit against a firm of architects for improper design of a building.

The court held that the cause of action accrued in February of 1968 when the plans for the building were finally approved, and not when the defects in the structure were discovered in December 1969. Thus the June 1974 action was barred by the applicable five-year statute of limitations. Again, *Locke* saw the injury as "complete" in 1968 because the plaintiff had suffered harm when the erroneous drawings were submitted, despite the fact that plaintiff was exposed to the wrong through the time of the suit.

In the instant action, the defendants' allegedly wrongful acts—breach of warranties, negligent design, manufacture and sale, negligent failure to warn, and indifference to the rights of others—all occurred when the machines were manufactured, sold, or delivered to plaintiff's employer, many years before this suit. Plaintiff's exposure to these threats continued until November 17, 1978, providing the two weeks of exposure within two years of this suit. After *Locke,* and especially under *Locke's* treatment of *Street,* these two weeks of exposure are relevant only if plaintiff was caused some injury during that period. If plaintiff's injuries were "complete" before that time, and further exposure caused no injury, his claims are barred by the statute of limitations.

Again, the only evidence in the record on this point is Dr. Donlan's affidavit. His conclusion that as of November, 1980 plaintiff was suffering from no pulmonary disease or process which was not present by August 1978 or before indicates that plaintiff's injuries were "complete" more than two years before this action was brought, and that no injury was caused plaintiff by the two weeks of exposure. As noted, plaintiff's counsel has conceded that there is no evidence to controvert this conclusion. Although plaintiff's claims for any injury caused during the two-week period, such as an aggravation of his respiratory problems, would be timely, the record reveals that no such injury occurred. With no conflict in the medical evidence on this point, partial summary judgment must be awarded the defendants.

The case of *Farley v. Goode,* 219 Va. 969, 252 S.E.2d 594 (1979), relied on heavily by plaintiff's counsel in oral argument, does not alter this result. *Farley* was a malpractice action by a patient against her dentist for negligent failure to examine, diagnose and treat her periodontal disease. Plaintiff visited the defendant regularly from 1966 to 1969, once in 1972, and on several occasions in 1974 and 1976, with the last appointment on August 23, 1976. In September of 1976, plaintiff was diagnosed by another dentist to have advanced periodontal disease, which had existed, and should have been discovered, as early as 1971. The suit was filed on November 19, 1976.

Concluding that the action was not barred by the two-year limitations period of § 8.01–243(A), the court stated:

We hold under these facts that when malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

252 S.E.2d at 599.

*Farley* was not referred to in the *Locke* opinion. It is, however, readily distinguishable both from *Locke* and from the instant case. The *Farley* rule seems to be limited to actions, such as malpractice cases, which involve continuous treatment or the continuous provision of services over a period of time. Even if the rule could be extended to other than malpractice actions, plaintiff herein has not alleged any continuous series of wrongs by the defendants. Moreover, *Farley* does not differ from *Locke's* rule on the relevance of the dates of a defendant's wrongful acts or of plaintiff's exposure to them, for in *Farley* each wrongful act did cause injury to the plaintiff: the periodon-

tal disease involved develops slowly and becomes progressively worse if untreated.[13] Here there was no injury caused by plaintiff's last exposure to the defendants' allegedly wrongful acts. Lastly, *Locke's* treatment of *Street*, which involved one of the very injuries at issue in this case, leaves little room for doubt that where the plaintiff's injuries are "complete" more than two years before suit, the action is untimely.[14]

An appropriate order shall issue.

---

**13.**  252 S.E.2d at 597.

**14.**  The Court also rejects the argument of plaintiff's counsel, made at the hearing on this motion, that the date of injury under *Locke* is the date at which plaintiff's injuries become provable in court. Although it is true that the "time plaintiff was hurt" is to be established by evidence which "pinpoints the date of injury with a reasonable degree of medical certainty," 275 S.E.2d at 905, *Locke* specifically stated that

the date of initial diagnosis does not mark the beginning of the limitations period. Plaintiff's interpretation of "provable injury" would postpone the running of the period until a diagnosis is made. Moreover, *Locke* defined "injury" to mean "positive, physical or mental hurt to the claimant, not legal wrong to him in the broad sense that his legally protected interests have been invaded." 275 S.E.2d at 904.