**Blaine Edward LARGE, Appellant,**

v.

**BUCYRUS–ERIE CO. and Northwest Engineering Co., Appellees.**

**No. 82–1383.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1983.

Decided May 12, 1983.

---

Gerald F. Ragland, Jr., Burkeville, Va., for appellant.

D. Eugene Webb, Jr., Richmond, Va. (Andrew J. Ellis, Jr., Mays, Valentine, Davenport & Moore, James C. Shannon, May, Miller & Parsons, Richmond, Va., on brief), for appellees.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge and HAYNSWORTH, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

Plaintiff takes appeal from the orders[1] of the district court granting summary judgment to defendants. The issue presented here is whether the plaintiff's personal injury claim accrued within the two year period circumscribed by the Virginia statute of limitations. Va.Code § 8.01–243(A) (1977). Because we hold that the injuries complained of occurred outside the two year period, we affirm.

## I

Blaine Edward Large was employed by Luck Quarries, Inc. in Burkeville, Virginia from April 2, 1962 until November 17, 1978. During the course of this employment, Large operated and maintained two power shovels, one of which was the product of Bucyrus-Erie Company and the other of Northwest Engineering Company.

Large filed suit against Bucyrus-Erie and Northwest Engineering on November 3, 1980 alleging that their negligence in designing, manufacturing and selling the power shovels; breach of express and implied warranties; and failure to warn plaintiff of the dangers of exposure to dust and noise resulted in certain respiratory illnesses and a bilateral hearing loss.[2] Factually, the foundation of his complaint is that the placement of the operator's station exposed him to excessive noise, silica dust, stone dust and asbestos dust emanating from the engine, clutch, drums, fans, winches and other parts of the machines when operational; and that the power shovels are designed so that the engine cooling air is sucked or blown by the operator's station, thereby exposing the operator further to the high levels of dust surrounding him.

Because of this exposure, Large claims he experiences a bilateral hearing loss and suffers from silicosis, industrial bronchitis and asbestosis.[3] He asserts that the defendants' conduct was a continuing tort that occurred up to the last day he worked, November 17, 1978. Defendants argue that the plaintiff's injuries occurred prior to November 3, 1978; therefore, his cause of action accrued outside the statute of limitations.

The district court correctly characterized the necessary determinations to be: (1) the date of injury and (2) the relevance of the two weeks of exposure that occurred within the limitations period. *Large v. Bucyrus-Erie Co.*, 524 F.Supp. 285, 287 (E.D.Va. 1981). The statute of limitations requires that every action for personal injuries be brought within two years after the cause of action shall have accrued. Va.Code § 8.01–243(A) (1977). The court below held that under *Locke v. Johns-Manville Corp.*, 221 Va. 951, 275 S.E.2d 900 (1981), the injury occurred, and therefore the cause of action accrued, more than two years before the

---

1. On October 20, 1981, the district court granted the defendant's motion for partial summary judgment on the respiratory injuries. *Large v. Bucyrus-Erie Co.*, 524 F.Supp. 285 (E.D.Va. 1981). The claim for bilateral hearing loss was disposed of on March 22, 1982 when the court granted summary judgment on all remaining claims. Although the second order was not published, the court applied identical legal reasoning to similar facts.

2. Plaintiff also has pled strict liability and reckless disregard of his rights by defendants.

3. For a detailed discussion of the facts of this case see the district court's order granting defendant's motion for partial summary judgment. 524 F.Supp. at 286–289.

suit was filed. Because the two week exposure did not cause any injury, the court found plaintiff's action to be time-barred. We agree with the court's reading and application of *Locke.*

## II

■ This case involves the application of a statute of limitations and defendants bear the burden of proving facts necessary to establish that the action is untimely filed. *Locke v. Johns-Manville,* 221 Va. 951, 958, 275 S.E.2d 900, 905 (1981). A motion for summary judgment is to be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

In the instant case, the district court granted two motions for summary judgment: one, a partial summary judgment as to liability on respiratory illnesses, *Large v. Bucyrus-Erie Co.,* 524 F.Supp. 285 (E.D.Va. 1981), and, two, a judgment on the remaining issue of bilateral hearing loss. These motions were granted on the uncontroverted medical evidence before the court.[4]

On the motion as to respiratory illnesses, the evidence was an affidavit by one of the defendants' expert witnesses. The doctor states that as of November 1980 the plaintiff "was suffering from no pulmonary disease or process which was not evident in August 1978 or before" and that all of the respiratory injuries complained of occurred more than two years before the suit was filed. 524 F.Supp. at 288–89. The affidavit by defendants' expert on the hearing loss states that plaintiff "experiences moderate to severe sensori-neural hearing losses in both ears and that he has experienced these problems since at least April 1977." The expert also stated that "as of January 4, 1982, [plaintiff] was experiencing no process, disability or impairment of the ears, auditory nerves, or other system related to hearing, which was not evident in April

1977." The only medical testimony before the court was that all the plaintiff's injuries had occurred outside the two year period in which the cause is required to be brought. Therefore, the district court held that *Locke v. Johns-Manville Co.* required it to dismiss the action as time-barred.

*Locke* is a products liability case wherein the plaintiff alleged he had contracted mesothelioma, a cancer of the lung, because of exposure to asbestos in the workplace. The Virginia Supreme Court was faced with the same issue presented here, the determination of the date of injury for a condition that did not come into existence at one specific point in time.

Locke's exposure to asbestos had ended in September 1972, but his suit was not filed until July of 1978, nearly six years later. The first evidence of any lung-related disease was some impairment of lung function in November 1977 and an x-ray taken on May 22, 1978. Plaintiff filed suit in July of 1978, within two years of the first evidence of the disease, but well outside two years from the last exposure. The defendants argued that because the statute ran from the date of last exposure, plaintiff's suit was untimely. Locke argued, however, that the statute of limitations could not begin to run until he had suffered some injury that was legally cognizable.

The Virginia court began its analysis by noting that no right of action may accrue until the essential elements of a cause of action have occurred. These three elements are (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that duty or right, and (3) harm or damage to the plaintiff as a proximate consequence of the violation or breach. The court then held that all of these factors must be present for a cause of action to accrue; therefore, a plaintiff's cause of action for damages for a personal injury does not accrue until he is hurt. *Locke, Id.* 221 Va. at 957, 275 S.E.2d at 904. *See, Caudill v. Wise*

4. *See,* 524 F.Supp. at 289. As stated above, the order relating to the motion on the claim for hearing loss was not published. In his order, however, Judge Merhige stated that the only

evidence provided the court was an affidavit filed by the defendants; therefore, the plaintiffs again produced no evidence to controvert the findings in the doctor's affidavit.

*Rambler, Inc.,* 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969); *Barnes v. Sears, Roebuck & Co.,* 406 F.2d 859, 861 (4th Cir.1969); *Sides v. Richard Machine Works, Inc.,* 406 F.2d 445, 446 (4th Cir.1969). (All cited in *Locke* ).

■ The court next coupled this rule with Va.Code § 8.01–230 (1977) that specifies "a cause of action for personal injuries shall be deemed to accrue and the prescribed limitations period shall commence to run *from the date the injury is sustained.*" 221 Va. at 955, 275 S.E.2d at 904. Thus, the occurrence of an injury, not the wrongful act by a defendant, triggers the running of the statutory time period. Moreover, the court explicitly held that the crucial question in a case such as this one is: "When was the plaintiff hurt?" *Id.* at 958, 275 S.E.2d at 905.[5]

Applying this rule to the facts of the case, the *Locke* court held that the " 'time plaintiff was hurt' is to be established from available competent evidence, produced by a plaintiff or a defendant, that pinpoints the precise date of injury with a reasonable degree of medical certainty." *Id.* at 959, 275 S.E.2d at 905. Explaining that while mesothelioma occurs from inhalation of asbestos dust the tumor does not form until some later date, the court found plaintiff's injury did not occur in harmony with the wrongful act of exposing plaintiff to asbestos fibers, but occurred with either the impairment of lung function or the x-ray showing a lung abnormality. *Id.* at 959, 275 S.E.2d at 905.

It is instructive to note both that the court stated the running of the statute is not tied to the date of the wrongful act and that the court concluded the accrual point to be when the damage occurs, not when the symptoms manifest the injury. *Id.* at 957–59, 275 S.E.2d at 904–05. Keeping these principles in mind, this court must apply *Locke* to the facts of the case and make the determination whether the trial court was correct to grant the summary judgment motions.

■ The illnesses complained of by plaintiff do not arise at a given point in time; instead they result over a period of time, the beginning being unknown. Therefore, the competent evidence produced by the parties must be used to determine, with a reasonable degree of medical certainty, the precise date of injury. As stated above, the uncontroverted testimony of the expert witnesses established that both the respiratory diseases and the hearing loss existed and were evident more than two years prior to the institution of the suit. Although this evidence does not pinpoint the exact date of injury, it is competent evidence that establishes, to a reasonable degree of medical certainty, that the injury occurred outside the two year period allowed by Va.Code § 8.01–243(A).

### III

The only relevant inquiry remaining is the significance of the two week period of exposure to noise and dust that occurred within the statutory period. The plaintiff argues that this two week period constitutes part of a continuing wrong by defendants that injured plaintiff, consequently, the action was timely filed.

Plaintiff draws support for his argument from the case of *Farley v. Goode,* 219 Va. 969, 252 S.E.2d 594 (1979). *Farley* was a malpractice suit in which plaintiff sued her dentist for negligently failing to diagnose and treat a periodontal disease. The plaintiff had first been treated by the dentist in 1966 and the course of treatment lasted through 1976. The disease had existed in a state that a general dentist exercising ordinary care would have diagnosed it as early as 1971. The suit was not filed until 1976, well after the two year period following the "injury."

---

**5.** The *Locke* court specifically noted that it was not adopting a "discovery rule" that triggers the running of the statute only when the injury is, or reasonably should have been discovered.

It held that the trigger date is the date of injury, even if the symptoms were not manifest for years afterward.

The Virginia Supreme Court rejected the defendant's argument that under *Caudill v. Wise Rambler, Inc.* the plaintiff's cause of action had accrued outside the statute of limitations. The court, specifically limiting its holding to the facts, held that when

> malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

219 Va. at 976, 252 S.E.2d at 599. The rationale of this holding is that the dentist, while in a physician-patient relationship, engages in an "undertaking which requires a continuation of services [and] the statute of limitations does not begin to run until the termination of the undertaking." While at first blush this case may seem appealing and helpful to plaintiff, it can be distinguished both factually and legally; therefore, it cannot avail plaintiff here.

First, the plaintiff has not alleged any injury that occurred during the two week period. As discussed above, the uncontroverted medical evidence proved that the injuries all occurred and were complete more than two years before plaintiff filed his cause of action. Therefore, no injury has occurred to plaintiff within the two year period.

Second, *Farley* was specifically limited to its facts. Those facts were that there existed a relationship of professional to client wherein the professional had undertaken to perform a duty that required a continuation of services. Thus, each time the dentist examined the patient, he failed to diagnose the disease and committed a wrongful act that actually injured the plaintiff. The duty imposed by the court was to make an accurate diagnosis, something the dentist failed to do, injuring the plaintiff each time because her gum disease worsened. Appellant Large was not injured by any act, whether negligent or not, that occurred within the limitations period. Moreover, selling a piece of equipment to plaintiff's employer is a far different relationship than that of physician to client because there is no undertaking to provide a continuation of services to plaintiff.

Third, while the Supreme Court of Virginia did recognize the adoption of a continuing negligence theory, it also recognized that the theory was explicitly limited to professional relationships that required a continuation of services. *Farley,* 219 Va. at 980, 252 S.E.2d at 601. The court affirmed its general rule that the statute runs from the date of the injury and stated that the mere fact that the physician-patient relationship survived did not mean a cause of action did. Rather, the continuous service must relate to the illness or injury alleged to be malpractice; if the act were a single act, such as leaving a needle inside a patient, the statute ran from that negligent act because the only injury occurred on that date. *Id.* at 979–80, 252 S.E.2d at 600–01.

There being no undertaking to provide a continuous service, nor an injury occurring within the statutory period, it is clear that the plaintiff's action is untimely. *Locke* is on point with the present case factually and teaches that the statute runs from the date of injury determined to a medical certainty, not the date of last exposure. In cases based upon facts such as *Locke* and this one, the running of the statute is triggered by the injury even if it occurs years before the symptoms, not the date of the wrongful act, an entirely different element in the cause of action. 221 Va. at 957–59, 275 S.E.2d 904–905. *Locke* is clearly controlling on these facts, not *Farley;* it is clear under Virginia law that the statute has run.[6]

---

6. We would, at this point, like to note our approval of the lower court's discussion and treatment of the Virginia Supreme Court's decisions regarding the statute of limitations at 524 F.Supp. at 289–292. Because of the court's thorough and excellent discussion of the cases in its opinion, we see no need to rediscuss them here. *See also, Locke v. Johns-Manville Co.*

## IV

There was no injury to the plaintiff within the two week period falling within the statute of limitations. The uncontroverted competent evidence established that all medical injuries complained of by plaintiff occurred more than two years prior to the filing of suit. There was no undertaking by defendants to provide continuous service to plaintiff such as occurs in a physician-client or attorney-client relationship; therefore, *Farley* cannot apply to these facts. We hold that the district court correctly interpreted and applied *Locke v. Johns-Manville* when it granted the summary judgment motions. Accordingly, the judgment of the district court is

AFFIRMED.

HARRISON L. WINTER, Chief Judge, concurring in part and dissenting in part:

I agree with what the majority has written regarding the untimeliness of five of Large's personal injury claims,[1] and so I concur in affirming the district court's summary judgment for defendants as to them. Large's other cause of action, however, alleges a "continuing wrong" in the form of a negligent failure to warn, a breach of duty which, I conclude, is deemed under Virginia law to be ongoing until the plaintiff's last exposure to the alleged harm. Under the standards set forth in the Virginia cases, then, the three essential elements of Large's cause of action for failure to warn were not present until within two years of suit, *i.e.*, when Large resigned and his exposure to the hazards ceased. I therefore dissent from the majority's failure to differentiate this count from the other causes of action that are time-barred, and would reverse the summary judgment for defendants on it.

## I.

Virginia has long recognized that certain kinds of tortious conduct are best classified as involving "continuing wrongs." *See, e.g., Wilson v. Miller,* 104 Va. 446, 51 S.E. 837 (1905). Among such wrongs is the negligent failure to warn of a product's dangers. As the district judge here has previously described Virginia law in such a case:

> In alleging negligence based upon a failure to warn, the plaintiffs are in effect alleging that the defendant [manufacturer] was under a duty to warn them of the harmful effects of "Picrin" [a spot removing chemical they had used in their work], and was negligent in failing to do so. Such a duty would be a continuing duty, and negligence in failing to carry out that duty would be continuing negligence.

*Tyler v. Street & Co.,* 322 F.Supp. 541, 544 (E.D.Va.1971); *see also City of Richmond v. James,* 170 Va. 553, 197 S.E. 416, 419–22 (1938); *cf. Featherall v. Firestone Tire & Rubber Co.,* 219 Va. 949, 252 S.E.2d 358, 366–67, 369 (1979). It follows that Large's allegation of the manufacturers' negligent failure to warn of the possible deleterious consequences of their product falls well within the "continuing wrong" category of torts.

The significance of an allegation that defendants are guilty of a continuing wrong is that the breach of duty is dated from the plaintiff's last exposure to the hazardous condition or wrongful conduct.[2] Thus, in *Richmond v. James, supra,* the Virginia Supreme Court held that a city's failure either to correct a leak in a gas pipe it had installed or to terminate supplying gas to the

---

1. Specifically, I concur in judgment for defendants on plaintiff's claims as to (1) breach of express warranty, (2) breach of implied warranty, (3) negligent design and manufacture, (4) strict liability, and (5) reckless indifference to plaintiff's rights. The sixth claim alleged a negligent failure to warn.

2. In some states this principle is cast in terms of the tolling of an otherwise accrued cause of action. *See, e.g., Everhart v. Rich's, Inc.,* 229 Ga. 798, 194 S.E.2d 425, 428 (1972) ("While the tort [as of the time of injury] is then complete in the sense that it will support a claim, it is nevertheless a tort of a continuing nature which tolls the statute of limitation so long as the continued exposure to the hazard is occasioned by the continued failure of the tortfeasor to warn the victim . . . ."), *conformed to* 196 S.E.2d 475, 128 Ga.App. 319 (1973).

endangered customer constituted "continuing negligence", and therefore was actionable beyond the time that suit would have been barred had the breach of duty been dated from the time of the original negligence in construction of the pipeline, or even from the first manifestation of physical harm to the customer. More recently, in *Farley v. Goode,* 219 Va. 969, 252 S.E.2d 594, 599 (1979), the Virginia Supreme Court rejected that defendant's contention that prior cases [3] required the dating of accrual from the first instance of negligent treatment of a patient by a dentist, explaining:

> In each of those cases the cause of action stemmed from a single, isolated non-continuing wrongful act. Here, the right of action arose from a continuous tort in which the negligent failure to diagnose properly resulted in omission to perform or recommend necessary treatment.

The *Farley* court dated accrual as of the cessation of the course of continuing wrong rather than its beginning, as have many similar "last exposure" holdings.[4] *See Wilson v. Miller, supra; McCormick v. Romans & Gunn,* 214 Va. 144, 198 S.E.2d 651, 654–55 (1973); *Fenton v. Danaceau,* 220 Va. 1, 255 S.E.2d 349 (1979) (per curiam); *Tyler, supra; cf. Boains v. Lasar Manufacturing Co., Inc.,* 330 F.Supp. 1134, 1136 (D.Conn.1971) (construing a limitations statute similar to Virginia's in a negligent failure to warn case such that " 'the statute does not begin to run until that course of conduct is completed.' "); *Rowe v. Gatke Corp.,* 126 F.2d 61, 66 (7 Cir.1942) (under Indiana law, action stemming from workplace exposure to asbestos does not accrue until "last exposure", *i.e.,* termination of employment); *Simmons v. American Mut. Liability Ins. Co.,* 433 F.Supp. 747, 751 (S.D.Ala.1976), *aff'd,* 560 F.2d 1022 (5 Cir.1977) (action

alleging silicosis injuries stemming from unsafe workplace does not accrue in Alabama until "the last date of employment in the type of work causing the injury."); *Armour & Company, Inc. v. Mitchell,* 262 F.2d 580 (6 Cir.1958) (Tennessee law).

Yet in purporting to apply the recent statement of Virginia's law of accrual found in *Locke v. Johns-Manville Corp.,* 221 Va. 951, 275 S.E.2d 900, 905 (1981), the majority ignores the full test stated there, and thus overlooks the significance of the continuing tort allegation. *Locke* stated plainly:

> There is no right of action until there is a cause of action. *Caudill v. Wise Rambler,* 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). The essential elements of a cause of action, whether based on a tortious act or breach of contract, are (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that duty or right, and (3) harm or damage to the plaintiff as a proximate consequence of the violation or breach. *Id. See Sides v. Richard Machine Works, Inc.,* 406 F.2d 445, 446 (4th Cir.1969). A cause of action does not evolve unless *all* of these factors are present.

(emphasis added). For *all* three factors to be present, it is not enough—as the majority would suggest—only that identifiable injury have occurred; where the breach of duty alleged is one of a continuing nature, that second element is not present until the wrongful conduct finally ceases.

## II.

Because it involves a similar occupational disease, *Locke,* which dated accrual of the cause of action in that case from the time of injury, superficially appears to support

---

3. The *Farley* defendant relied upon, *inter alia, Caudill v. Wise Rambler, Inc.,* 210 Va. 11, 168 S.E.2d 257 (1969) (breach of implied warranty occurred at time of purchase of automobile; action accrued when injuries later resulted as a consequence) and *Hawks v. DeHart,* 206 Va. 810, 146 S.E.2d 187 (1966) (single wrongful act of leaving surgical needle in patient's neck).

4. In an unpublished opinion, Chief Judge MacKenzie summarized the Virginia accrual rule as "where plaintiff alleges a continuing series of exposures to toxic substances and/or nuclear radiation from defendants' products, the cause of action accrued when defendants last inflicted injury on plaintiff, *i.e.,* the last exposure." *Ragland v. General Dynamics,* No. 78–194–N, slip op. at 2, (E.D.Va. Aug. 10, 1981).

the majority's holding. On close analysis, I do not think that *Locke* controls. *Locke* involved a worker who, after several decades of workplace exposure to asbestos, finally retired in 1972. Because the worker did not bring suit until 1978, however, the only unripened element of a cause of action possible was the emergence of actual injury after retirement, *i.e., after* the "last exposure". *Locke* offered no occasion to be concerned with when a *breach of duty* occurred; it was concerned with when *harm* resulted. Therefore, I do not think that *Locke* can be read in the negative to hold that the time of injury signals accrual even where injury arises *before* the ongoing breach of duty ceases.

The district court, whose analysis is adopted by the majority, erroneously suggests that *Street v. Consumers Mining Corp.,* 185 Va. 561, 39 S.E.2d 271 (1946) also prescribes the first manifestation of injury as the accrual date for a cause of action no matter what the nature of the duty which was breached. The worker in *Street* had retired in 1936, by which time his pulmonary injuries had already set in. Unlike *Large,* but like *Locke,* the plaintiff in *Street* did not sue within two years of last exposure, but rather waited until 1944 to file. By then, all three elements of his cause of action had long since been present. Therefore neither *Locke* nor *Street* rescind the "continuing tort" line of cases applicable here.[5]

### III.

To my mind, the fact that only two weeks of allegedly wrongful conduct occurred within the two-year limitations period is irrelevant to a determination that identifiable injury had occurred earlier. If, under Virginia law, the first occurrence of physical injury signalled accrual in all circumstances, neither the *Farley* nor *Fenton* holdings noted above were possible. In *Farley,* for example, injury to the plaintiff-patient's gums due to the defendant-dentist's failure to diagnose periodontal disease began as early as 1971. 252 S.E.2d at 596. Certainly this was more than "slight" actual injury, *see Caudill, supra,* as the negligent failure to diagnose resulted in the difference between $700 worth of curative treatment had such treatment begun in 1971 and $10,-000 in serious arrestive procedures by 1977. 252 S.E.2d at 597. Yet the action to recover for all injuries, not filed until late 1976, was not time-barred under *Locke* 's time-of-the-injury rationale, but rather held timely because of the continuing tort. *Fenton* involved a similarly wide time spread between the first manifestation of injury and the "last exposure" to wrongful conduct, with the identical dating of accrual at the time the continuing tort ceased with respect to the plaintiff.

*Farley* and *Fenton,* in my view, cannot simply be limited on this point as special cases of doctor-patient, or professional service, relationships. What is instead significant about *Farley* and *Fenton* is that they extended the continuing tort theory, al-

---

**5.** Indeed, in *Locke* the Virginia Supreme Court at least implicitly assumed that plaintiff's claim (negligent failure to warn) survived until the cessation of exposure upon his leaving work in 1972, even had injury occurred earlier. The *Locke* court stated:

> [T]he broad issue to be decided here is whether the plaintiff's right to bring his action accrued no later than 1972, when he was last exposed to the asbestos fibers from defendants' products, or whether his right accrued at some subsequent time, and if it did arise later, at what time did the right, in fact, accrue.

275 S.E.2d at 904. As the court also noted, "in all our prior decisions that reject the discovery [of the injury] rule, *the injury or damage existed at the time of the wrongful act;* it had

merely not been discovered in a timely manner. Here, however, there was no injury at the time of the wrongful act." *Id.* at 906 (emphasis added).

Thus, even though first exposure to asbestos had occurred in 1948 and injury may well have arisen prior to the *Locke* plaintiff's leaving work in 1972, the court assumed that accrual of a cause of action for a failure to warn would be dated at the time of last exposure at the earliest. And by distinguishing this case on the basis of one element's absence despite the presence of the others, the court established the principle that under particular circumstances *any* of the three elements of a cause of action might serve to delay the start of the statute of limitations.

ready established in other contexts under Virginia law, to malpractice cases, despite previous holdings suggesting to the contrary.[6] Nothing in *Farley* or *Fenton* purports to contract the limitations period for other forms of continuing torts. Rather, they are particularly instructive as being among the few Virginia cases in which the continuing wrong did not cease until later than the first onset of injury. As such, they demonstrate that a plaintiff last exposed to a continuing wrong within the limitations period is not confined to recovering only such damages as may be attributable to that period, but rather may receive compensation for all injuries cumulatively sustained throughout the course of the continuing tort.[7]

There is, moreover, no force to the broad notion that *Farley* and *Fenton* involve relationships, absent here, that the Commonwealth and society at large especially seek to encourage; there is no societal interest in encouraging a patient to continue to rely on injurious and substandard treatment of a negligent medical practitioner.[8] Rather,

the "continuing tort" analysis rests on the premise that in some contexts the plaintiff's ongoing exposure to the harmful situation is not the result of "sleeping on rights," but occurs instead because the defendant's continuous tortious behavior precludes its enjoyment of the repose that accompanies the running of the statute of limitations. Unlike the situation where breach is the result of a single past act by the defendant, where there is a continuing tort there is no prejudice to the defendant from the limitations period remaining open so long as the tortfeasor wrongfully maintains the hazardous condition, even beyond the first appearance of injury. If delay in the filing of some suits may result from a "last exposure" rule, it is a consequence of the rule that Virginia courts have already found warranted in reaching the rulings they have.

### IV.

Accordingly, I am persuaded that settled principles of Virginia's law of accrual compel the conclusion that Large's negligent

6. *See Morgan v. Schlanger,* 374 F.2d 235, 240 (4 Cir.1967), concluding after analyzing past Virginia cases in the context of a suit involving an ongoing course of medical treatment that "Virginia would not, in an appropriate case, embrace the continuing treatment rule."

7. The analysis in *Richmond v. James, supra,* 197 S.E. at 421–22, suggests that the rule as of 1938 would allow recovery only for injuries sustained within the limitations period. However, the *Richmond* court was only affirming the trial court's discretionary choice to limit recovery to injuries received within a special statutory notice period applicable to suits against the city under its City Charter, and did not pass on the issue of whether a choice to allow recovery for all injuries would have been sustained. To the extent that *Richmond* is nonetheless seen as limiting recovery to injuries suffered within the limitations period, it is inconsistent with the same court's treatment of the actions in *Farley* and *Fenton.* As the most recent cases, they should be deemed to announce the governing rule.

8. If society's interest in letting a given relationship run its course *is* the motivating rationale of the "continuing tort" cases, there are substantial arguments for not penalizing an employee who fails to sue one of the employer's suppliers while still employed. Experience has shown that even employee actions well outside

the strict scope of employment may sometimes result in discharge or more subtle pressures or harassment if an employer perceives such actions as adverse to company interests. *See, e.g., Petermann v. International Brotherhood of Teamsters,* 174 Cal.App.2d 184, 344 P.2d 25 (1959) (employee allegedly fired after refusing to commit perjury at legislative hearing); *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974) (female employee allegedly discharged after refusing foreman's social advances); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975) (discharge allegedly because employee performed jury duty); *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974) (employee allegedly discharged for reporting product defects to corporate superiors). If a suit such as this one were viewed by the employer as disruptive, the employee might well be put to the choice between failing to satisfy a shorter statute of limitations period or "rocking the boat" while still employed. The continuing tort rule, however, promotes a societal interest in fostering harmonious workplace relations while not forcing the employee to forgo recovery for personal injury. I find nothing in the Virginia cases to suggest that Virginia has concern for the physician-patient relationship but is indifferent to the one between employer and employee.

failure to warn cause of action was timely filed.