**Donald C. WILLIAMS, Sr., Plaintiff–Appellant,**

v.

**E.I. DUPONT DE NEMOURS AND COMPANY, Defendant–Appellee.**

No. 92–2467.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1993.

Decided Dec. 9, 1993.

Gary Raymond Hershner, Hershner, Jacobs, Metzger & Hicks, Richmond, VA, argued, for plaintiff-appellant.

Gary Joseph Spahn, Mays & Valentine, Richmond, VA, argued (Gary N. Brown, E.I. DuPont de Nemours & Co., Wilmington, DE, on the brief), for defendant-appellee.

Before WIDENER and LUTTIG, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

The appellant, Donald Williams, brought this action against E.I. DuPont de Nemours and Company (DuPont) alleging that he sustained injuries as a result of his use of DuPont's paint products. Williams's theory of liability was that DuPont had negligently failed to warn him of the hazards of its products and that DuPont had breached its express and implied warranties. The district court granted summary judgment as a matter of law in favor of DuPont because it found that Williams had filed his lawsuit more than two years after the cause of action had accrued, and that it was therefore time barred under Virginia law. We affirm in part, vacate in part, and remand.

The facts are taken at this stage of the proceeding most favorably to Williams. Williams worked as a spray painter with Baker Equipment Engineering from May 15, 1989 until July 26, 1989. In that employment he spray painted every day with DuPont paint products and claims exposure to those DuPont products for a period beginning May 15, 1989 and ending on or about June 13, 1989.[1] Within a few days after beginning to use these products, Williams experienced dizziness, coughing, and chest tightness. Subsequently during this period of employment, Williams got sick six more times. Sometime prior to June 13, 1989, Williams complained to his supervisor of headaches, vertigo, coughing, and chest tightness. He testified

---

1. Indeed, a particular incident of exposure occurred June 13, 1989 when Williams's mask tore and exposed him to the spray. He went to Stuart Circle Hospital on that account on that date.

that such evidences of injury first occurred not more than two weeks after his initial exposure, and that they have persisted to this day. Sometime in 1990, Williams began to experience eye problems, which he claims have been diagnosed as optic nerve dissolution caused by exposure to the paint products.

On June 13, 1991, Williams filed a motion for judgment in the Circuit Court of the City of Richmond, Virginia.[2] The case was removed to the United States District Court for the Eastern District of Virginia by motion of DuPont on June 25, 1992. DuPont thereafter filed a motion for summary judgment, contending that Williams's cause of action was time barred under Virginia's statute of limitations because it was filed more than two years after Williams's cause of action accrued. Williams responded by asserting that because he was continuously injured throughout the time period he was exposed to DuPont's products, from May 15th to June 13th, his action should not be time barred.

Applying Va.Code § 8.01–230 which provides that a personal injury cause of action accrues "from the date the injury is sustained," the district court found that Williams's cause of action accrued at the date of his injury, which it determined was no later than May 29, 1989. Therefore, the district court held that the plaintiff's cause of action was time barred under Va.Code § 8.01–243(A), which provides that "action[s] for personal injuries" must be "brought within two years after the cause of action accrues," and entered judgment for DuPont as a matter of law. The district court relied primarily on *Locke v. Johns–Manville Corp.*, 221 Va. 951, 275 S.E.2d 900 (1981) and *Large v. Bucyrus–Erie Co.*, 524 F.Supp. 285 (E.D.Va.1981), *aff'd*, 707 F.2d 94 (4th Cir. 1983). This appeal followed.

*Locke* was a case in which the plaintiff had breathed asbestos fibers from 1948 until 1972 and involved mesothelioma, a type of cancer caused by exposure to asbestos. Such tumors do not begin to form contemporaneously with exposure to asbestos dust, and many people exposed to asbestos particles never develop mesothelioma. There was no clinical or medical evidence of any injury until after the lapse of some time after the last exposure, just how much time not having been revealed in the record. The times of exposure to asbestos bear no medical relationship to when and if the malignant tumor will occur. Prior to 1978, there was no medical evidence plaintiff had any lung related abnormality or disease. He filed his suit July 24, 1978, having first experienced impairment of lung function in November, 1977, having had an x-ray abnormality revealed in May of 1978, and having had mesothelioma diagnosed in June of 1978. 275 S.E.2d at 901–905.

On these facts, the Virginia Court held that "the statute of limitations began to run from the time plaintiff was hurt." 275 S.E.2d at 905. And the Court continued, "The 'time plaintiff was hurt' is to be established from available competent evidence, produced by a plaintiff or a defendant, that pinpoints the precise date of injury with a reasonable degree of medical certainty." 275 S.E.2d at 905.

Absent other evidence, and the Court described the evidence before it as "scant," the decision stated that the statute would have started to run either in November, 1977, when the plaintiff first experienced impairment of lung function, or in May, 1978, when an x-ray revealed a lung impairment. But the Court concluded that since "the accrual point is when damage occurs," 275 S.E.2d at 905, it was conceivable that the disease had manifested itself by symptoms such as pain, discomfort or impairment of function, and that expert medical testimony might demonstrate the injury occurred weeks, months or even years before the onset of the symptoms. Thus, the cause of action would have accrued and the statute would have begun to run from the earlier, and not the later, time although there had been no diagnosis communicated to the victim, or even made. 275

---

**2.** The papers filed by the parties are illegible as to the filing date of the complaint. An examination of the records of the Clerk of the Circuit Court of the City of Richmond discloses that this suit was filed on June 13, 1991. Therefore, only one day of exposure is within the two year period. The parties and the district court placed the filing date as June 9, 1991.

S.E.2d at 905. The Court remanded the case to the trial court to reconsider its decision that the statute of limitations had run. It continued to reject the discovery rule, as it had in the past, in cases in which injury or damage came into existence at the time of the wrongful act, and distinguished the case before it because there was "no injury at the time of the wrongful act." 275 S.E.2d at 906.

We applied *Locke* in *Large*. *Large* was a case in which a construction worker who had operated power shovels had been exposed for some 16 years, between 1962 and 1978, to noise and dust which he claimed were at excessively high levels due to the faulty design of the machinery. The last exposure of the plaintiff was on November 17, 1978, and the plaintiff had filed his suit on November 3, 1980, so that he was exposed to the noise and dust during the last two weeks of the two-year limitation period, from November 3 until November 17, 1978. The district court held that "[b]ecause the two week exposure did not cause any injury" the action was time barred. 707 F.2d at 96. As might have been expected from the Virginia Court's decision in *Locke,* the case depended on the medical evidence of expert witnesses. That evidence revealed that plaintiff " 'was suffering from no pulmonary disease or process which was not evident in August, 1978 or before' " and that "all of the respiratory injuries complained of occurred more than two years before the suit was filed." 707 F.2d at 96. The expert testimony on the hearing loss was that plaintiff " 'experiences moderate to severe sensori-neural hearing losses in both ears and that he has experienced these problems since at least April, 1977.' " And further, " 'as of January 4, 1982 [plaintiff] was experiencing no process, disability or impairment of the ears, auditory nerves or other system related to hearing which was not evident in April, 1977.' " 707 F.2d at 96. On these facts, we held that since all of plaintiff's injuries occurred outside the two-year period of the statute of limitations, the suit was time barred. With respect to the two-week period of exposure within the two-year period of limitations, we held that "the uncontroverted medical evidence proved that the injuries all

occurred and were complete more than two years before plaintiff filed his cause of action." 707 F.2d at 98. On that account, we affirmed.

Before continuing further, another principle of Virginia law which runs through many of the cases should be mentioned, as noted in *Scarpa v. Melzig,* 237 Va. 509, 379 S.E.2d 307, 309 (1989), citing *Richmond Development & H.A. v. Laburnum Const. Corp.,* 195 Va. 827, 80 S.E.2d 574 (1954), "Moreover, when any injury, though slight, is sustained as the consequence of an alleged wrong, the right of action for a personal injury accrues and the statute of limitations begins to run at once. [Citation omitted.] It is immaterial that all the damages resulting from the wrong may not have been sustained at the time of the negligent act; the running of the statute of limitations is not postponed by the fact that substantial damages do not occur until a later date." The Court construed that rule in *Starnes v. Cayouette,* 244 Va. 202, 419 S.E.2d 669, 671 (1992) as follows: ". . . when a tort causes a contemporaneous personal injury the fact that the victim suffered greater physical or mental hurt from that tort at a later date does not defer the date of accrual of the cause of action." In *Starnes,* which was a suit by an adult survivor of child abuse, the court held that the plaintiff had suffered an injury each time the defendant committed a wrongful act against her, and her cause of action accrued on that date.

In the case before us, we have not been favored with any medical evidence. Not even any reports of injury or records from Stuart Circle or MCV[3] hospitals have been filed, much less depositions or affidavits from physicians who may have examined the plaintiff, either for treatment or in connection with this case.

On this record, it being apparent that the plaintiff claims he was injured from each exposure to the paint products, his each exposure to the DuPont paint products prior to June 13, 1989, is subject to the bar of the statute of limitations, and so far as that goes, the result obtained by the district court is

---

3. Medical College of Virginia.

correct, but under the rule we have stated from *Starnes.*

As to the exposure, however, on June 13, 1989, the result is different. The record reveals the following from Williams's deposition:

Q. All right. Sir, let me show you this document, which appears to be a report of the accident or incident. It says incident date, 6/13/89.

A. Uh–huh.

Q. Then it says: Williams was spray painting truck body. He noticed he was inhaling paint fumes. He stopped painting and found that the mask was damaged.

Now, that relates to this paper mask; is that correct?

A. Yes, sir.

Q. Okay. And that was—occurred on June 13, 1989; is that correct?

A. Yes, sir. (A.38)

. . . .

Q. Now, sir, what I was trying to establish was, on June 13, 1989, you were spray painting and noticed that you were inhaling fumes because of a rip of some sort in the paper mask, which is Exhibit 7, and you went to Stuart Circle as the result of that; is that correct?

A. Yes, sir. (A.44).

Unlike in *Large,* there is not any evidence in this record, medical or otherwise, that Williams's exposure on June 13, 1989, for which he went to the emergency room at Stuart Circle Hospital, did not injure him. Indeed, the ordinary construction of the testimony in his deposition, which we have just related, to the effect that he breathed paint spray on June 13th and went to the hospital "as a result" would only lead to the conclusion that such was a contemporaneous injury from exposure to the paint spray. Certainly that is a permissible construction which is all that is required to successfully oppose a motion for summary judgment. To repeat, in *Large,* all of the plaintiff's injuries occurred

prior to the two-week period during which the plaintiff worked and was exposed within the two-year period of the statute of limitations. In the case at hand, there is not any evidence that all of this plaintiff's injuries occurred prior to June 13, 1989; and on that last day the plaintiff, indeed, went to the hospital, claiming just the injury he has sued for here. Williams claims he "was hurt" on June 13, 1989. *Locke,* 275 S.E.2d at 905, and the record justifies making that claim.

The judgment of the district court is accordingly affirmed in part and vacated in part, and the case is remanded for proceedings not inconsistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.* [4]

LUTTIG, Circuit Judge, dissenting:

Today's decision represents a brazen circumvention of the Commonwealth of Virginia's limitation of continuing tort liability to contexts where defendants have undertaken professional obligations to provide continuing services, in direct conflict with this circuit's precedent. For these reasons, I dissent.

Plaintiff-appellant brought this products liability suit against E.I. Dupont de Nemours and Co., claiming that he sustained injury from inhalation of defendant's paint and paint products during the period May 15 to June 13, 1989. By his own admission, and as the district court found, J.A. at 82–83, plaintiff was first injured by inhalation of the paint fumes no later than May 29, 1989. Notwithstanding that he sustained injuries at this time, he did not file this action until June 13, 1991, more than two years after he was first injured. Under Virginia law, the statute of limitations for a personal injury tort action accrues "when *any* injury, though slight, is sustained as the consequence of an alleged wrong." *Scarpa v. Melzig,* 237 Va. 509, 379 S.E.2d 307, 309 (Va.1989) (emphasis added); *see Locke v. Johns–Manville Corp.,* 221 Va. 951, 275 S.E.2d 900, 904–05 (Va. 1981). "Injury" in turn is defined as any "positive, physical or mental hurt." *Scarpa,*

---

4. Footnote 1 on page 468 of the dissenting opinion, of course, is not the opinion of the majority in this case.

379 S.E.2d at 309 (quoting *Locke*, 275 S.E.2d at 904). Therefore, under Virginia law, appellant's action unquestionably was time-barred, as the district court held in granting appellee's motion for summary judgment. Va.Code §§ 8.01–230, 8.01–243(A) (Michie 1992).

The majority, in what can fairly be termed a bizarre opinion, creates out of whole cloth a cause of action on Williams' behalf for injuries sustained on *the single day of June 13* which, it tells us without explanation, is wholly distinct from and independent of the causes of action brought by the plaintiff. It then holds that this cause of action, unlike those actually brought by plaintiff, is not barred by Virginia's statute of limitations. There is, of course, no basis whatsoever in law or in the record for the court's extraordinary holding, and the court does not even attempt to offer any. Plaintiff brought actions on implied and express warranties for injuries allegedly sustained over the single period of the "several weeks ending on or about June 13, 1989." *See* Motion for Judgment, J.A. at 4–6. He did not bring a separate cause of action arising out of the events of June 13. He did not allege that the defendant owed him a duty on that day different or even distinct from that owed on any other day during the relevant period. He did not allege that the defendant separately breached an owed duty on June 13. And, directly contradictory to the court's holding, he did not contend that he suffered on June 13 any injuries other than those already sustained.[1]

The majority's holding that appellant stated a separate cause of action for injuries sustained on June 13, 1989, rests entirely upon an isolated response taken out of context that was given by appellant to a question during his deposition, which incidentally not even appellant cites or relies upon. *See ante* at 466–67. Standing alone, this statement in no way supports the court's holding that appellant suffered an injury on June 13, 1989, different from that suffered as a result of his previous exposures to appellee's paint fumes, much less that appellant brought a separate cause of action for this injury. In fact, when read in context, it is obvious that not only does the statement not support the majority's holding, it affirmatively establishes the error of that holding.

On the same deposition transcript page where appellant states that after inhaling paint fumes on June 13, 1989, he went to the hospital, he expressly affirms that he had *previously* (within several days of May 15) complained to his employer that he had become sick from inhaling fumes from defendant's paint products. J.A. at 44. In response to the very next question, appellant states that the symptoms of which he had earlier complained included coughing, tight chest, dizziness and headaches—the injuries for which he now seeks recovery. *Id.* at 45. Thereafter, on the same deposition transcript page, appellant testifies that he believed that the symptoms of which he had earlier complained were attributable to his inhalation of the paint fumes. *Id.* And finally, appellant says only moments later that *all* of the injuries for which he seeks recovery resulted from the *same* exposure to defendant's paint products. *Id.* at 47. Indeed, throughout his deposition, appellant was candid that he knew within several days of May 15 that he had been injured by his exposure to the paint fumes. *See, e.g., id.* at 41, 42, 44, 46–47, 49.[2]

The majority understandably labors to distinguish this case from our controlling authority *Large v. Bucyrus–Erie Co.*, 707 F.2d 94, 98 (4th Cir.1983); *see also Locke v. Johns–Manville Corp.*, 275 S.E.2d at 904–07, repeatedly emphasizing that the plaintiff's injuries in that case all occurred prior to the last two weeks within the two-year statute of limitations period. *Ante* at 465–66 ("On that account, we affirmed."); *id.* at 467. This was the "factual" ground on which we distinguished in *Large* the Virginia Supreme Court's decision in *Farley v. Goode*, 219 Va. 969, 252 S.E.2d 594 (1979), upon which the

---

1. As a consequence of these failures, on remand the district court will be bound to award summary judgment again in DuPont's favor.

2. Appellant has been as candid before the court, representing to us that he "first suffered some headaches, dizziness, coughing, loss of appetite and tight chest on May 17 or May 18, 1989." Appellant's Amended Br. at 6.

plaintiff relied for his claim that the final two weeks within the statutory period (as June 13 here) were part of a continuing wrong by the defendant. 707 F.2d at 98. What the majority fails to mention, however, is that we also distinguished *Farley* on the "legal" grounds, *see id.* ("While at first blush [*Farley* ] may seem appealing and helpful to plaintiff, it can be distinguished both factually and legally."), that it was expressly limited to its facts involving "a relationship of professional to client wherein the professional had undertaken to perform a duty that required a continuation of services," *id.*, and that the Virginia Supreme Court had held that the state's continuing negligence theory "was explicitly limited to professional relationships that required a continuation of services." *Id.* (citation omitted). Thus, even if one were to accept the majority's factual distinction of this case from *Large,* plaintiff still would not escape the statutory bar because, as we explained in *Large,* the statute of limitations governing personal injury causes of action from exposure to allegedly defective products, such as plaintiff's, "runs from the date of injury ... *not the date of last exposure.*" 707 F.2d at 98 (emphasis added) (citing *Locke* as "on point" factually and legally controlling). That is, it is irrelevant that appellant was injured also on June 13; because he cannot base his claim on a theory of continuing tort liability, the statute accrued on the date when he was first injured.

To his credit, appellant does not even hint at any such disposition as the majority bestows upon him. He has contended throughout these proceedings that defendant's wrong was continuing, that it was not completed until plaintiff was last exposed to defendant's paint fumes, and therefore that his claims are not statutorily barred, *even though the date when he was first injured by defendant's wrong predated by more than two years the filing of his lawsuit. See, e.g.,* Appellant's Br. at 9–10. He has repeatedly urged the court "to decide the case on what has always been the issue, that of whether the cause of action accrues and whether the statute of limitations begins to run upon initial injury, regardless of continuous exposure and injury." Appellant's Reply Br. at 6; *id.* at 5; *see also* Appellant's Amended Br. at 2. I would

accept appellant's invitation and hold, as Virginia law and the precedent from this circuit unambiguously require, that the continuing tort theory is available only where there exists an agreement to provide continuing services, *see Large,* 707 F.2d at 98 (citing *Farley v. Goode,* 219 Va. 969, 252 S.E.2d 594, 600–01 (1979)), and therefore that appellant's claims are, as the district court held, barred by the statute of limitations.