67 F.3d 293
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Michael V. BROWN, Plaintiff-Appellant,
v.
PLYWOOD PANELS, INC., Defendant-Appellee.
Geneva ENGLAND, Plaintiff-Appellant,
v.
PLYWOOD PANELS, INC., Defendant-Appellee.
 Nos. 94-2008, 94-2009.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1995.
Decided Sept. 21, 1995.
 
 Argued: Stephen Gary Merrill, Ghent Law Offices, Norfolk, Virginia, for Appellants. Louis Herbert Lazaron, Taylor & Walker, P.C., Norfolk, Virginia, for Appellee. On Brief: James E. Brydges, Jr., Taylor & Walker, P.C., Norfolk, Virginia, for Appellee.
 Before HALL and WILLIAMS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PHILLIPS, Senior Circuit Judge:
 
 
 1
 In these consolidated appeals, Michael Brown and Geneva England challenge a magistrate judge's order granting their employer, Plywood Panels, Inc., summary judgment on the ground that their claims of workplace personal injury were barred by Virginia's two-year statute of limitations. We affirm.
 
 
 2
 * Stated in the light most favorable to the claimants, the facts of record are these. England worked at Plywood Panels from 1972 until 1993; Brown, from 1987 until 1993. By 1990, both were employed as panel inspectors, working ten hour shifts four or five days a week. Until July 5, 1991, they sat on a platform above the production line watching plywood panels move by on a conveyor belt and pushing buttons to reject defective panels or accept good ones. The production line at that time had a roller which lifted the panels up to the inspectors and changed their angles so that the inspectors could examine the panels while in a relaxed sitting position. In addition, well-placed lights illuminated the panels as they passed by.
 
 
 3
 When Brown and England returned to work on July 5, 1991, after the annual factory shutdown, the lights had been repositioned and the roller had been removed. As a result, the panels were no longer lifted or lit for the inspectors to examine. To compensate for the change, the inspectors had to sit with their heads ducked down between their knees to be able to examine the panels passing underneath, but with their arms held up to reach the accept/reject buttons. Maintaining this position for ten hour shifts caused the claimants considerable neck and back strain in addition to reducing their efficiency. Within weeks of the reconfiguration of the production line, both noticed back and neck strain and suggested to their supervisors that the roller be restored to the production line. They continued without success to make that suggestion and to complain about their discomfort to their supervisors until the factory closed permanently in June 1993.
 
 
 4
 Their back and neck pain gradually worsened until both sought medical treatment. Brown did not consult a physician until May 1992, when he consulted his family practitioner, Dr. Frank Westmeyer. Earlier, he had consulted Dr. Westmeyer about neck pain in either March 1990 or March 1991, before the removal of the roller from the assembly line. He again consulted Dr. Westmeyer about neck pain in May, June, and August 1992. Brown initially associated the pain he reported in 1992 with the unknown causes of his earlier pain or with sleeping "wrong on his neck," instead of his new work conditions. J.A. 142-44. Treatment with anti-inflammatory drugs and muscle relaxants, wearing a cervical collar, and physical therapy temporarily resolved the problem. Brown consulted Dr. Westmeyer several times during the fall of 1992 for other problems but did not mention neck pain during those visits. He returned to Dr. Westmeyer in December 1992 with a recurrence of the neck pain. Dr. Westmeyer referred Brown to a chiropractor, Dr. Rick Temple, who was the first professional consultant to relate Brown's pain to his working conditions. Eventually, in October 1993, Dr. Temple ordered an MRI examination of Brown. This revealed the severity of his condition; he was suffering from bulging discs in the vertebrae of his neck which caused a narrowing of the neural canal and pinched nerves.
 
 
 5
 England first sought medical treatment for her neck pain in December, 1993, from Dr. Lawrence Morales. Earlier, perhaps as early as October, 1991, she had mentioned having neck pain to her family physician, who attributed it to pre-existing arthritis and treated it as such. In December, 1993, using x-ray and MRI examination, Dr. Morales diagnosed her condition as spondylosis (degenerative bony changes characterized by the development of spurs) and a herniated disc.
 
 
 6
 Brown commenced a federal action against Plywood Panels under the diversity jurisdiction on December 8, 1993. England commenced a comparable action on February 4, 1994. Both complaints alleged that Plywood Panels was negligent in not altering the production line to correct the conditions about which the panel inspectors complained, and that this negligence was the proximate cause of the respective injuries suffered by the claimants.[1] By consent of the parties the two cases were assigned for determination by a United States Magistrate Judge. Before the magistrate judge, Plywood Panels moved separately for summary judgment in both cases on the ground that each was barred by the applicable Virginia two-year statute of limitations.
 
 
 7
 In opposition to the motions, the claimants offered, respectively, the deposition testimony of Drs. Morales and Westmeyer. Each physician deposed that the problems they diagnosed were progressive ones rather than ones with a sudden onset, and that they were unable to pinpoint the date of onset of the problems. J.A. 128-34, 150-55, 161-65, 170-72. Both opined, however, that the serious problems of both claimants that were discovered in 1993 were related to the initial onset of back and neck pain symptoms first experienced and reported by each claimant, and that both doctors had ultimately to rely on the history given by the patient in trying to establish the date of onset of the injury for which remedy was sought. J.A. 130, 163-64. And, Dr. Westmeyer emphasized that there was no way for him to tell which episodes of pain were related to Brown's work conditions and which had other causes (such as sleeping position). J.A. 164, 167.
 
 
 8
 Following a hearing held jointly with respect to the two actions, the magistrate judge granted the motions for summary judgment in each on the ground that the claims were barred by Virginia's two-year statute of limitations for personal injury actions. In both cases, the court held that "although the facts suggest that [plaintiff's] injury was eventually diagnosed and that the injury became more severe over time, the law in Virginia does not prevent the cause of action from accruing the day the injury was initially sustained." J.A. 219, 229. The court held that Brown's cause of action accrued in July or August 1991, more than two years before he filed his complaint, when he first suffered symptoms of pain and discomfort, even though the pain increased and his medical condition worsened over time. Similarly, the court held that England's cause of action accrued in July or August 1991, or October 1991 at the latest, more than two years before she filed her complaint. These appeals followed and were consolidated for determination by this court.
 
 II
 
 9
 In these diversity cases, we look to Virginia law for the applicable statute of limitations and for the rule regarding when the claimants' causes of actions accrued. Joyce v. A.C. & S., Inc., 785 F.2d 1200, 1203 (4th Cir.1986) (citing Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530 (1949)). Under that law, the statute of limitations for personal injury claims is two years from the time the cause of action accrues. Va.Code Ann. Sec. 8.01-243(A) (Michie 1992).
 
 
 10
 A cause of action accrues under Virginia statutory and decisional law only when all three elements of the cause of action--duty owed, duty violated, injury proximately caused thereby--have occurred. Locke v. Johns-Manville Corp., 275 S.E.2d 900, 904 (Va.1981) (citing Caudill v. Wise Rambler, 168 S.E.2d 257, 259 (Va.1969)). Virginia statutory law incorporates this rule: in personal injury actions, "the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained." Va.Code Ann. Sec. 8.01-230 (Michie 1992) (emphasis added). "Injury," for accrual purposes, means "positive, physical or mental hurt to the claimant, not legal wrong to him in the broad sense that his legally protected interests have been invaded." Locke, 275 S.E.2d at 904. Accordingly, although Plywood Panels may have come under a duty to correct the claimants' harmful working conditions and failed negligently to do so as early as mid-1991, the claimants' causes of action did not necessarily accrue immediately upon the first negligent violation of duty, but only when they first suffered legally compensable physical harm. The issue controlling whether summary judgment in favor of Plywood Panels was appropriate, therefore, is whether Brown and England were "injured," for accrual purposes, more than two years before they filed their respective actions.
 
 
 11
 Their injuries in the required sense are not necessarily the herniated and bulging discs respectively diagnosed for each only in 1992. Because "there is but a single, indivisible cause of action for all injuries sustained, whether or not all of the damage is immediately apparent," Joyce, 785 F.2d at 1204 (footnote omitted), it is the first such injury sustained by each claimant that controls the accrual of the cause of action, notwithstanding that more significant injuries may later have developed. In other words,
 
 
 12
 when any injury, though slight, is sustained as the consequence of an alleged wrong, the right of action for a personal injury accrues and the statute of limitations begins to run at once. It is immaterial that all the damages resulting from the wrong may not have been sustained at the time of the negligent act; the running of the statute of limitations is not postponed by the fact that substantial damages do not occur until a later date.
 
 
 13
 Williams v. E.I. DuPont de Nemours & Co., 11 F.3d 464, 466 (4th Cir.1993) (applying Virginia law and quoting Scarpa v. Melzig, 379 S.E.2d 307, 309 (Va.1989)). See also Starnes v. Cayouette, 419 S.E.2d 669, 671 (Va.1992) ("[W]hen a tort causes a contemporaneous personal injury, the fact that the victim suffered greater physical ... hurt from that tort at a later date does not defer the date of accrual of the cause of action."). The causes of action here accrued and the statute of limitations began running, therefore, as soon as they developed any injuries, however slight, from their work conditions. Critically, under Virginia law, this is not the date when a doctor first diagnosed an injury or communicated a diagnosis to one claiming injury. Locke, 275 S.E.2d at 905-06 (no "discovery rule" in Virginia limitations law).
 
 
 14
 Our opinion in Joyce is instructive. There, we held that a plaintiff's personal injury asbestosis claim was time-barred because, although his asbestosis had developed within two years of the time he initiated his suit, he had long before begun to suffer from other, minor asbestos-related illnesses.[2] The onset of the first asbestos-related disease marked the accrual of his cause of action as to all diseases resulting from his exposure, rather than the onset of each disease marking the accrual of a separate cause of action. Joyce, 785 F.2d at 1205. Significantly, the fact that, for at least a decade, the Joyce plaintiff's first disease (pleural thickening) was asymptomatic and its existence was known only to the employer through its routine physical examination of him but not to the plaintiff, did not alter the holding that the onset of the first disease began the running of the statute of limitations. Id. at 1202. See also McHenry v. Adams, 448 S.E.2d 390 (Va.1994) (plaintiff's cause of action for emotional distress accrued when he first became aware of emotional problems at his mother's gravesite rather than later when he confirmed the problems by having his mother's body disinterred and at that time suffered intensified physical and mental problems).
 
 
 15
 Similarly, here Brown and England suffered from physical ailments that were characterized by gradual onset, beginning with minor back and neck strain and progressing to more serious injuries (the bulging and herniated discs). It is of no consequence that their injuries became worse with time, that more serious medical conditions than those which evoked their first minor complaints developed later, and that the injuries were initially undiagnosed and relatively asymptomatic. The question is only when, in relation to their commencement of actions, they sustained the first compensable injuries as a result of the altered working conditions to which they ascribe all their injuries.
 
 
 16
 Because Plywood Panels is seeking summary judgment regarding the affirmative defense of the statute of limitations, it bears the burden of establishing that the dates of Brown and England's first injuries were more than two years before the dates they filed suit. Clifton D. Mayhew, Inc. v. Blake Constr. Co., 482 F.2d 1260, 1262 (4th Cir.1973). These dates must "be established from available competent evidence, produced by a plaintiff or a defendant, that pinpoints the precise date of injury with a reasonable degree of medical certainty." Locke, 275 S.E.2d at 905. A "reasonable degree of medical certainty" means that "it is at least more probable than not " that the injuries occurred at a particular time. See Greif Cos. (Genesco) v. Sipe, 434 S.E.2d 314, 318 (Va.Ct.App.1993) (applying definition in context of Worker's Compensation Act). Plywood Panels therefore was not required to establish as a matter of law the exact date that the injuries first were sustained; it needed only to establish that it was more probable than not that they occurred more than two years prior to the dates Brown and England filed suit.
 
 
 17
 Plywood Panels has contended throughout that the accruing injuries occurred on the date that the appellants first returned to work after the production line was changed, July 5, 1991, or, at the latest, on the date they first felt pain in their necks. It pinpoints this later date as sometime in July or August 1991, soon after the production line configuration was changed, when the claimants both first complained to their supervisors that the change was causing them difficulties.
 
 
 18
 We agree. In deposition, Brown admitted that he had experienced back and neck pain as early as July or August 1991, although he qualified this by stating that the pain was not severe enough to justify seeking medical attention until 1992. J.A. 60-61, 73-74. England similarly stated in deposition that she complained about neck and back pain as early as the first day after the assembly line had been changed and that she had experienced symptoms similar to the ones associated with her herniated disc as early as October 1991. J.A. 90-95. Their doctors both testified in deposition that they could not pinpoint the exact date that the injuries had occurred, but that they would rely on the medical history provided by their patients to determine when the injuries began. They both concluded that the herniated or bulging discs were progressive problems that would have begun earlier than the first visit to the doctors and that onset would have to be traced back to the patients' first complaints of pain. Accordingly, although it is not possible to pinpoint the exact date of the onset of Brown and England's first injuries, we conclude that the undisputed evidence (medical and otherwise) establishes that Brown and England were first injured in the summer or fall of 1991, which in any case is more than two years before December 8, 1993 (the date Brown filed suit) and February 4, 1994 (the date England filed suit). We therefore agree with the magistrate judge's conclusion that both actions are barred by the statute of limitations.
 
 
 19
 In so holding, we reject two theories proffered by the claimants. First, invoking the "continuing wrongs" doctrine, they contend that their causes of action did not accrue until the last day that they were exposed to the neck-straining work conditions, June 16, 1993, which was well within two years of the dates they filed suit. This doctrine, under which a cause of action for injuries caused by a continuing wrong accrues only at the time the tortious conduct ceases, does not, however, apply under Virginia law except in cases involving "a relationship of professional to client wherein the professional had undertaken to perform a duty that required a continuation of services." Large v. Bucyrus-Erie Co., 707 F.2d 94, 98 (4th Cir.1983); see also Keller v. Denny, 352 S.E.2d 327, 330-31 (Va.1987) (where applicable, tolls statute until provision of services has ended). The Virginia Supreme Court has expressly declined to extend the doctrine to personal injury cases not involving attorney-client, doctor-patient malpractice claims. Keller, 352 S.E.2d at 330-31; see Large, 707 F.2d at 98 (interpreting Virginia law as not applying doctrine in situations involving continuing exposure to physical hazard after onset of injury). The "continuing wrong" doctrine does not apply here.
 
 
 20
 We also reject as inapplicable here the "multiple tort" theory urged by claimants. Under that doctrine, each day's injury from a repeated course of separate violations of duty gives rise to a separate cause of action. As applied here, claimants urge, this would make these actions timely as to all injuries sustained within the two years immediately preceding their commencements of action. We agree with the district court that the injuries that allegedly occurred here do not involve "multiple torts" for statute of limitation purposes, but instead involve an indivisible single cause of action for an injury first sustained well outside the limitations period that resulted eventually in considerably greater physical harm than that first experienced.[3] See Locke, 275 S.E.2d at 904-05.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Under Virginia law, only common law personal injury actions were available to these claimants as potential sources of remedy. The Virginia Worker's Compensation Act does not cover their alleged injuries. It provides remedies only for "injury by accident arising out of ... employment" and "occupational diseases," Va.Code Ann. Sec. 65.2-101 (Michie 1995), and under Virginia law the injuries here at issue are neither. They are not "occupational diseases," because the Act specifically excludes from this category "any condition of the neck, back or spinal column." Id. Sec. 65.2-400(B)(4). They are not "accidental injuries" because the Virginia Supreme Court has held that "injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events" do not fall in that category. Middlekauff v. Allstate Ins. Co., 439 S.E.2d 394, 396 (Va.1994). The common law right of action remained available as a potential source because it is unimpaired where the Worker's Compensation Act does not apply. Griffith v. Raven Red Ash Coal Co., 20 S.E.2d 530, 533-34 (Va.1942)
 
 
 [2]
 A later amendment to the applicable statute of limitations now provides that asbestos-related causes of action do not accrue until a diagnosis of the disease is communicated to the patient by a physician. Va.Code Ann. Sec. 8.01-249(4) (Michie Supp.1995). This amendment did not apply retroactively to Joyce, see Palmer v. Norfolk & W. Ry. Co., 646 F.Supp. 610, 612 (W.D.Va.1985) whose "indivisible cause of action" analysis remains in place as to non-asbestos claims
 
 
 [3]
 The claimants' reliance on Williams v. E.I. Dupont de Nemours & Co., 11 F.3d 464 (4th Cir.1993), as support for their multiple-tort argument is misplaced. The split-panel majority decision in that case, which arguably does apply such a theory (as opposed to an extension of the related "continuing-tort" theory) is distinguishable. The claim in Williams was of cumulative injury resulting from repetitive exposures of claimant--a commercial spray painter--to a paint manufacturer's allegedly hazardous paint product. Because the panel majority in Williams thought that the claimant's proffered proof in opposing summary judgment included one episode of specific harm from one particular day's exposure, the court held that this gave rise to a separate cause of action, making wholesale dismissal of the claim of cumulative injury improper. Here, no such evidence of discrete injury from a particular day's exposure to the hazard complained of appears in the record. If, as Williams indicates, Virginia law contemplates such an application of multiple-tort-by-repetitive-conduct theory to statute of limitations defenses, the instant case does not provide the occasion for its application