# CIRCUIT COURT OF LOUDOUN COUNTY

Leslie A. Smith

    v.

David Berman et al.

Case No. (Civil) 49916

Alison J. Wray

    v.

David Berman et al.

Case No. (Civil) 50260

May 5, 2009

BY JUDGE JAMES H. CHAMBLIN

These cases came before the Court on March 6, 2009, to be heard on the Pleas in Bar filed in each case by the Defendants, David Berman, M.D., and Dulles Cosmetic Surgery and Skin Care Center, P.L.L.C., asserting that the claims of medical malpractice and fraud set forth in the Complaint filed by the Plaintiff, Leslie A. Smith, in Civil No. 49916, and in the Complaint filed by the Plaintiff, Alison J. Wray, in Civil No. 50260, are barred by the applicable statutes of limitation. After consideration of the memoranda and the argument of counsel, the Pleas in Bar are overruled.

The facts and issues in each case are similar.

In each case, the Plaintiff was a patient of Dr. Berman. In February 2004, he injected each Plaintiff with a substance that each Plaintiff thought was Botox® Cosmetic ("Botox"). However, Dr. Berman actually did not inject each Plaintiff with Botox, but he injected them with a Botulinum Toxin Type A product sold and distributed by Toxin Research International, Inc. ("TRI-toxin"). TRI-toxin had not been licensed or approved by the Federal Drug Administration ("FDA"). The label on the vials of TRI-toxin used by Dr. Berman stated "[f]or research purposes only – [n]ot for human use." Dr. Berman did not tell either Plaintiff that he used TRI-toxin rather than Botox for the injection.

Each Plaintiff alleges that, when Dr. Berman administered the injections, he represented that he was injecting them with Botox and that he never disclosed that he was using the unapproved, unlicensed, and less expensive TRI-toxin.

Ms. Smith alleges that she did not learn that she had been injected by Dr. Berman with TRI-toxin, and not Botox, until May 21, 2007, when she met with two agents of the Federal Bureau of Investigation ("FBI"), who were investigating Dr. Berman. At this meeting, she also learned that TRI-toxin had not been approved or licensed for human use by the FDA.

Ms. Smith alleges that, upon her learning that she had been injected with TRI-toxin rather than Botox, she suffered from extreme emotional pain and suffering and distress, which manifested itself in both emotional and physical ways, to include extreme anxiety, insomnia, and gastrointestinal symptoms. She alleges that, as a result of Dr. Berman's actions, she has sustained emotional and physical injuries and has incurred pecuniary loss.

Ms. Wray alleges that she received correspondence from Dr. Berman in March 2007 advising her that she may be hearing from an FDA representative regarding a botulinum toxin he purchased in January, February, and March 2004. After receipt of the letter, Ms. Wray was contacted by an FDA representative regarding Dr. Berman. Ms. Wray subsequently met with an FDA representative. During this meeting, she learned for the first time that, on two occasions in February 2004, Dr. Berman had not injected her with Botox, but with TRI-toxin. She also learned that TRI-toxin was not approved or licensed by the FDA.

Ms. Wray alleges that as a result of Dr. Berman's actions, she sustained injuries. She also alleges that, due to Dr. Berman's negligence, she has endured extreme emotional pain and suffering, humiliation, and has incurred pecuniary loss.

About May 2007, Dr. Berman pleaded guilty in United States District Court for the Eastern District of Virginia to introducing into interstate commerce a drug that was misbranded.

On October 22, 2007, Ms. Smith filed suit against Dr. Berman in the Fairfax Circuit Court. It was transferred by agreement to this Court. By order entered March 21, 2008, the Plaintiff took a nonsuit. Ms. Smith filed the present Complaint herein on May 8, 2008.

On January 29, 2008, Ms. Wray filed suit against Dr. Berman in this Court. Her suit was nonsuited by order entered March 28, 2008. She filed the present Complaint herein on May 30, 2008.

The Defendants contend that each Plaintiff's claims for medical malpractice and fraud are barred by the applicable two year statute of limitations. Specifically, the Defendants argue that the two year statute of limitations for actions for personal injuries of Va. Code § 8.01-243(A) bars the medical malpractice claims and that the two year statute of limitations of Va. Code § 8.01-243(A) (two year statute of limitations for fraud) and Va. Code § 8.01-249(1) (when cause of action for fraud accrues) bars the fraud claims.

Under Va. Code § 8.01-230, a right of action is deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person. Accordingly, the Defendants argue that each Plaintiff sustained injuries in February 2004 when Dr. Berman injected her with a product not approved by the FDA and failed to inform her that he was doing so. Because each Plaintiff waited for more than two years after February 2004 to file suit against Dr. Berman, the Defendants assert that their claims are time barred.

In Counts I and II of each Complaint, each Plaintiff has asserted a claim for personal injury due to medical malpractice. The alleged malpractice occurred in February 2004, which is when each Plaintiff was damaged. The wrong committed by Dr. Berman occurred in February 2004. Virginia has not adopted a "discovery rule" for personal injury actions. Hence, the statute of limitations began to run in February 2004.

The Plaintiffs argue that they did not suffer any injuries until they learned that Dr. Berman had injected them with TRI-toxin instead of Botox. I do not agree. But for the injections they would not have suffered any injury. I find no difference between the late discovery (of over three years) of being injected with an unapproved and unlicensed product (represented to be Botox) and the discovery by Mrs. Hawks of a needle in her throat sixteen years after surgery, *Hawks v. DeHart*, 206 Va. 810 (1966), or an explosion in January 1948 caused by a defective gas pipe union in February 1943, *Housing*

*Authority v. Laburnum Corp.*, 195 Va. 827 (1954), or finally ascertaining that there are design defects in architectural drawings over five years after they were accepted and approved. *Virginia Military Inst. v. King*, 217 Va. 751 (1977). In all three cases, the applicable statute of limitations had run before the plaintiff discovered any damage.

Accordingly, I find that the statute of limitations on the medical malpractice claim started to run in February 2004. However, as pointed out by the Plaintiffs, there are two statutory exceptions to the two year statute of limitations for actions for personal injuries set forth in sub-paragraphs (1) and (2) of Va. Code § 8.01-243(C). I think both apply in these cases and prevent the Plaintiffs' medical malpractice claims from being time barred.

Va. Code § 8.01-243(C)(1) provides that the two year limitations period in actions for malpractice against a health care provider (as are the Defendants) shall be extended as follows:

> In cases arising out of a foreign object having no therapeutic or diagnostic effect being left in a patient's body, for a period of one year from the date the object is discovered or reasonably should have been discovered.

Each Plaintiff filed suit within one year of discovering that Dr. Berman had injected them with an unapproved and unlicensed product. The failure of the Plaintiffs to allege that either one of them suffered any injury because of the presence of TRI-toxin in their body does not infer that TRI-toxin had a therapeutic or diagnostic effect on them anymore than it infers that there was no therapeutic or diagnostic effect. However, the label on the TRI-toxin could infer that it has no therapeutic or diagnostic effect. Accordingly, the Plaintiffs have alleged enough to support a showing that the TRI-toxin had no therapeutic or diagnostic effect, and hence, the savings provision of Va. Code § 8.01-243(C)(1) for now, prevents the medical malpractice claims from being time barred. This ruling does not preclude the issue from being raised again after further discovery or at trial when evidence of the therapeutic or diagnostic effect, if any, of TRI-toxin has been fully developed.

Va. Code § 8.01-243(C)(2) also provides that the two year limitations period for such an action shall be extended as follows:

> In cases in which fraud, concealment, or intentional misrepresentation prevented discovery of the injury within the two year period, for one year from the date the injury is

discovered, or, by exercise of due diligence, reasonably should have been discovered.

Each Plaintiff alleges that Dr. Berman misrepresented to them that he was injecting them with Botox. Dr. Berman would have then intentionally and deliberately concealed the true nature of the substance injected by him. In Counts III and IV, the Plaintiffs have a claim for fraud because of Dr. Berman's actions.

The allegations of each Complaint show that Dr. Berman's fraud, concealment, and misrepresentation prevented each Plaintiff from discovering what he had actually injected into them until March and May 2007. Each filed suit within one year thereafter.

As with the prior ruling concerning the "no therapeutic or diagnostic effect" exception, this ruling will not preclude the Defendants from raising this issue later in discovery or at trial after all the evidence as to the alleged fraud has been developed.

In their argument that the fraud claims are barred by the two year limitations period for fraud under Va. Code § 8.01-243(A), the Defendants seem to argue that the Plaintiffs should have by the exercise of due diligence discovered the alleged fraud by reading Internet articles in 2004 and newspaper articles in December 2004 and February 2005. The articles do not refer to Dr. Berman or state anything that would lead anyone to find that Dr. Berman perpetrated a fraud on the Plaintiffs. There is nothing to indicate that either Plaintiff ever read any of the articles. I do not think that there is any authority for the proposition that a person is charged with knowledge of everything printed in a newspaper or put on the Internet.

As with the prior two issues, this issue may be addressed later in discovery or at trial when all the evidence concerning the fraud claim has been developed.